**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**KENNETH LEE WEINBERG,**

      **Plaintiff,**

**vs.**                    **Case No. 4:08cv480-MP/WCS**

**OFFICER ALLEY, PAM HODGES,
and MAURICE LANGSTON,**

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION

After service of the *pro se* Plaintiff's third amended civil rights complaint, doc. 18, the three named Defendants filed a motion for summary judgment motion.  Doc. 48. Plaintiff was advised of his burden in opposing summary judgment, doc. 49, and after several extensions of time, he has filed his opposition, doc. 61, and a supplemental affidavit in support of his opposition, doc. 64.  The motion is ready for a ruling.

**Allegations of the complaint, doc. 18**

Plaintiff alleges that on October 28, 2004, while being held in the Wakulla County Jail, Defendant Alley caused Plaintiff injury by spraying concentrated bleach in the Pod. Doc. 18, p. 5 (third complaint).  Plaintiff alleges that this incident was preceded by 15 separate exposures to concentrated bleach from August 10, 2004, to October 28,

2004.[1]  *Id.*  Plaintiff alleges that on October 28, 2004, after Plaintiff and other prisoners

filed had grievances to stop the earlier use of the bleach in that manner, and also

received newspaper publicity about the use of bleach (an article dated October 27,

2004), Defendant Alley retaliated against Plaintiff by spraying several gallons of liquid

bleach, more than other times, in the Pod and posted the newspaper article with

Plaintiff's name highlighted so the other prisoners would know Plaintiff was responsible

for the use of bleach.  *Id.*, at 6-7.  The lack of ventilation caused Plaintiff and other

inmates health issues, and Defendants were deliberately indifferent to their suffering.

*Id.*, at 7-8.  While Plaintiff and the other prisoners were "gasping for fresh air,"

Defendant Alley left the area without providing any assistance, leaving them in the "gas

chamber."  *Id.*, at 9.

Plaintiff contends that he tried to declare a medical emergency, but Defendant

Hodges refused to permit him to be seen by medical staff.  Correctional officers in the

control room allowed the inmates to leave the pod and go to the recreation yard to get

fresh air.  *Id.*, at 10.  No medical help was every provided and Defendant Hodges failed

to return to check on the welfare of the prisoners.  *Id.*

Defendant Langston transferred Plaintiff and Plaintiff was locked down in solitary

confinement.  *Id.*, at 11.  Plaintiff contends also that Defendant Langston failed to

properly train and supervise his subordinates.  *Id.*, at 13.  Plaintiff contends Defendant

Langston "knew, or should have know of the dangers of using concentrated bleach in

improperly ventilated areas of the county jail."  *Id.*  Plaintiff asserts he also failed in

---

[1] In his first complaint, Plaintiff alleged that "[t]his claim began on August 10,
2004, and continued until October 29, 2004, Plaintiff was transferred to Leon County
Jail and held in confinement."  Doc. 1, ¶ 36 (p. 36 on ECF).

providing medical care for prisoners, failed to oversee the use of the bleach, and showed deliberate indifference by failing to "respond to numerous grievances on the bleaching incident over several months." *Id.*

Finally, Plaintiff alleges that Defendant Alley again exposed him to concentrated bleach on two separate occasions from May 12, 2005, through July 8, 2005. *Id.*, at 13 (¶ 34).

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a

genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**Statute of Limitations**

Defendants assert the statute of limitations as a defense to any events which transpired prior to October 27, 2004, as Plaintiff submitted his complaint for filing on October 27, 2008.  Doc. 48, p. 3, n.1.  Although Plaintiff signed his complaint on October 27, 2008, the declaration on the complaint as signed by Plaintiff attests that he delivered his complaint to prison officials on October 28, 2008.  Doc. 1, p. 62.  Thus, the complaint was "filed" in this court on October 28, 2008.

A federal § 1983 claim for a violation of constitutional rights is governed by the forum state's residual personal injury statute of limitations.  Burton v. City of Belle Glade, 178 F.3d 1175, 1188 (11th Cir. 1999), citing Owens v. Okure, 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).  In Florida, "a plaintiff must commence a § 1983 claim . . . within four years of the allegedly unconstitutional or otherwise illegal act."  Burton, 178 F.3d at 1188, citing Baker v. Gulf & Western Indus., Inc., 850 F.2d 1480, 1483 (11th Cir.1988).

Plaintiff argues that incidents of exposure to excessive bleach prior to October 28, 2004, are not barred because the tort was continuing.  That is not persuasive.  While the length of the period is determined by state law, the date of accrual of a § 1983 action is a question of federal law.  Mullinax v. McElhenney, 817 F.2d 711, 716 (11th Cir. 1987) (and cases cited).  The statute of limitations begins to run when the facts supporting the cause of action are apparent or would be apparent to a reasonable person, and when the plaintiff knows or has reason to know of his injury and who inflicted the injury.  Id. (citations omitted).  Each incident of exposure to bleach was a separate incident giving rise to a separate claim.  Thus, the only claims at issue in this case are the ones arising on October 28, 2004, and the two alleged to have occurred between May 12, 2005, through July 8, 2005.

**Claims against Defendant Langston**

Plaintiff concedes that he misidentified Defendant Langston in this case, and expresses his willingness to dismiss him from this action.  Doc 61-1, p. 2.  On this

statement, construed as a notice of voluntary dismissal, claims against Defendant

Maurice Langston should be dismissed.

**The relevant Rule 56(e) evidence**[2]

In October of 2004, Plaintiff was a pretrial detainee at the Wakulla County Jail.

Doc. 48, p. 3. During several occasion in 2004, Defendant Alley supervised jail trustees

as they washed down Pod A-3, and the other pods in the Jail with a diluted cleaning

solution, consisting of one part bleach and ten parts water. Doc. 48, pp. 10-11; Alley

affidavit (doc. 48-1, pp. 1-2).[3] Defendant Pam Hodges directed the cleaning of the jail

with the diluted bleach solution "to address staph infections among inmates housed at

the Wakulla County Jail." Hodges affidavit (doc. 48-2, p. 2). Defendant Alley

supervised the trustees washing down the jail at the instruction of Defendant Hodges.

Alley affidavit (doc. 48-1, pp. 1-2). Defendant Hodges was not designated to supervise

the cleaning. Hodges affidavit (doc. 48-2, p. 2).

At one point during the cleaning, Defendant Alley had a conversation with Plaintiff

about the cleaning of the pods and he specifically told Plaintiff that the solution used

was one part bleach and ten parts water. Doc. 48, p. 11; Alley affidavit (doc. 48-1, p. 2).

Defendant Alley's understanding was that the cleaning was undertaken to address

---

[2] Upon initial review, it appeared that Defendants had properly submitted a statement of material facts. Doc. 48, pp.3-5. The more complete review given this document in ruling on the summary judgment motion reveals that it merely restates Plaintiff's allegations from the complaint. *See* N.D. Fla. Loc. R. 56.1(A). The motion does, however, present facts from the submitted affidavits within the memorandum of law.

[3] Defendant Alley's affidavit is filed electronically as doc. 48-1. As Plaintiff will not have access to the electronic record, citations will be made generally to the name of the exhibit and the precise citation in the electronic record, CM/ECF, given in parenthesis.

possible staph infections among inmates housed in the jail.  Doc. 48, p. 11; Alley affidavit (doc. 48-1, p. 2).  The cleaning was done at the direction of Defendant Hodges, not due to grievances or any newspaper article, and Defendant Alley is unaware of any grievances filed by Plaintiff about the cleaning.  Doc. 48, p. 11; Alley affidavit (doc. 48-1, p. 2).

Defendant Alley never used or supervised the cleaning of the jail with any caustic substances; only the diluted cleaning solution was used.  Doc. 48, p. 11; Alley affidavit (doc. 48-1, p. 3).  Defendant Alley was never notified that any inmate ever complained about the cleaning, and he has no personal knowledge that Plaintiff or anyone else was harmed as a result of cleaning with the diluted bleach solution.  Alley affidavit (doc. 48-1, pp. 2-3).

Defendant Alley makes clear in his affidavit that a concentrated bleach solution was never used to clean the jail, only the diluted solution, and that when cleaning was done, all 11 cells and 5 secure cells were cleaned with the diluted bleach solution of one part bleach, ten parts water.  Doc. 48, p. 14; Alley affidavit (doc. 48-1, p. 2).  Defendant Alley was directed by Defendant Hodges to have the trustees clean with the bleach solution to address concerns over a staph infection and not due to any grievances filed by Plaintiff.  *Id.*  Defendant Alley has no knowledge of any grievances Plaintiff filed about the cleaning with bleach, and no recollection of any newspaper article on the issue.  *Id.*, at 13-14; Alley affidavit (doc. 48-1, p. 2).  Defendant Alley was not involved in Plaintiff's transfer away from the jail nor was he involved with Plaintiff's outgoing mail.  Alley affidavit (doc. 48-1, p. 3).

Defendant Pam Hodges is the medical supervisor at the Wakulla County Jail and holds the rank of Lieutenant. Doc. 48, p. 15; Hodges affidavit (doc. 48-2, p. 1). She is certified both as a correctional officer and law enforcement officer, and is also licensed by the State of Florida as a Licensed Practical Nurse. Hodges affidavit (doc. 48-2, p. 1). In her capacity as medical supervisor, Defendant Hodges responds to grievances from inmates if they address medical issues. Hodges affidavit (doc. 48-2, p. 2). Plaintiff submitted various grievances on medical care issues, but Defendant Hodges received only one grievance from Plaintiff, dated October 18, 2004, in which he complained of the manner in which the Jail was cleaned with the diluted bleach solution. Doc. 48, pp. 15-16; Hodges affidavit (doc. 48-2, p. 3). While that grievance complained about the cleaning, it did not request medical care. *Id.* Nevertheless, on the date of the cleaning with bleach on October 28, 2004, Plaintiff submitted a grievance concerning medical care, stating that this his kidneys were hurting and he had blood in his urine, yet he did not mention the cleaning on that day in this grievance. Doc. 48, p. 16, Hodges affidavit (doc. 48-2, p. 3); Hodges' exhibit (doc. 48-2, p. 6).

Defendant Hodges submitted a copy of the grievance Plaintiff filed regarding the cleaning as an attachment to her affidavit. Hodges' exhibit (doc. 48-2, p. 5). In that grievance, dated October 18, 2004, Plaintiff stated that jail staff had been using "pure bleach" to clean and it was "causing a dangerous gas." Hodges' exhibit (doc. 48-2, p. 5). Plaintiff complained of lung problems, blurred vision and swollen eyes and said it was dangerous to their health. Hodges affidavit (doc. 48-2, p. 5). Defendant Hodges responded: "Advised to dilute bleach to 1:10 sol." *Id.* Plaintiff does not request any

medical care or treatment in that grievance; he simply complains of the manner in which the cleaning was done.

Defendant Hodges avers specifically in her affidavit that the cleaning solution was ten parts water and one part bleach. Doc. 48, p. 16, Hodges affidavit (doc. 48-2, p. 2). Concentrated bleach was never used to clean the cells in the Wakulla County Jail. *Id.* Furthermore, the purpose was to clean the jail to address staph infections among inmates housed in the Jail. *Id.*

Defendant Hodges states that at no time during the cleaning did she witness, nor was she made aware of, any medical emergency or any situation that arose as a result of the cleaning of the jail. Doc. 48, p. 16; Hodges affidavit (doc. 48-2, p. 2). She has no personal knowledge of any inmate sustaining any injuries as a result of the cleaning of the jail with the bleach solution. *Id.* While the cleaning was being performed by the trustees, the inmates were permitted to be out of their cells and to go outside to the recreation yard. *Id.*

Defendant Hodges did not, at any time, deny Plaintiff medical care. Doc. 48, p. 17; Hodges affidavit (doc. 48-2, p. 2). The only grievance Plaintiff submitted in which he complained about the jail cleaning with the bleach solution was limited to advising of health issues, but he did not request medical any care. Hodges' exhibit (doc. 48-2, p. 5); Hodges affidavit (doc. 48-2, p. 2). Defendant Hodges also states in her affidavit that she was not involved in any way with the decision to transfer Plaintiff away from Wakulla County Jail, nor did Defendant Hodges have any involvement in Plaintiff's claim about the alleged theft of his legal mail on October 28, 2004. *Id.*, at 19; Hodges affidavit.

Plaintiff asserts broadly that Defendant Hodges "failed to provide requested medical care and quickly left the area with prisoners having breathing problems." Plaintiff's declaration (Doc. 61-1, p. 4). Plaintiff also states that the correctional officers in the control room left the Pod to go to the recreation yard "because the toxic fumes" were so bad. Doc. 61-1, p. 4. "The hallway door to the recreation yard was left open to let the toxic fumes clear from the hallways." *Id.* Plaintiff contends in his declaration that this "was the only time the recreation yard was opened up" and this was "after the bleaching of pods A-3 and A-4." Doc. 61-1, pp. 4-5. Plaintiff states that they were allowed to go "to the recreation yard for one hour" but were forced to return and the fumes were bad for 4-5 more hours." Doc. 61-1, p. 44.

At another point, Plaintiff states:

> Prisoners were always allowed out of their cells when count was cleared at early a.m. around 5:30 a.m. The only time that prisoners were allowed to go to recreation was *on their normal 1 hour for each pod, each day.*

Doc. 61.-1, p. 45. Plaintiff then suggests once more that "[t]he only time that [pod] A-3 ever was allowed to go to the recreation yard because of the spraying of the concentrated bleach was on October 28, 2004, after Plaintiff Weinberg and other prisoners declared medical emergencies." Doc. 61-1, p. 45.

Plaintiff also states that the medical request he submitted on October 28, 2004, concerning his kidneys was done in the morning prior to the cleaning of the pod, which is why Plaintiff did not include any statements about problems resulting from the cleaning. Doc. 61-1, p. 5.

Plaintiff also avers that on October 14, 2004, he and 18 other prisoners "wrote and signed a grievance concerning Defendant Alley's use of concentrated bleach in the

county jail." Doc. 61-1, p. 12. Plaintiff says that Officer Kilgore made a copy of the grievance, gave the copy back to Plaintiff, and then turned the grievance over to the jail administrator. *Id.* Plaintiff says the grievance was never answered. *Id.*

Plaintiff states that on October 19, 2004, he had a hearing by telephone conference call from the jail with the court in his pending criminal case. Doc. 61-1, p. 12. At the conclusion of the hearing, Plaintiff says that he told the judge they were injuring prisoners at the jail by using pure bleach. *Id.* Plaintiff says that Defendant Alley was sitting three feet from him during this phone call and "heard every word said." *Id.*

Plaintiff avers that the bleach used in the jail is "much stronger" than regular, household bleach and that it was not diluted with one part bleach to ten parts water. Doc. 61-1, pp. 12-13. Plaintiff contends he knows concentrated bleach because of his experience in dry cleaning and laundry plants. *Id.*, at 13. Plaintiff states that he "often got samples of the bleach used and tested it in his hand and it was always concentrated bleach." *Id.*

Plaintiff asserts that on one occasion in September, 2004, he filed out a request form to get a mop and water to put on the floor and dilute the bleach because everyone was getting sick. Doc. 61-1, p. 14. Plaintiff states that it "took about 6 hrs for the gas that formed to begin clearing up." *Id.* Plaintiff complains that the bleach burned his lungs and eyes, and he had a headache and "dizzy spells for 9 hrs." *Id.*

Plaintiff reports that on several different occasions, he asked Defendant Alley to dilute the bleach, but the Defendant said no. Doc. 61-1, pp. 15-16. When Plaintiff complained to Defendant Alley that the use of the bleach was dangerous, Defendant

Alley just smiled.  *Id.*, at 15.  When Plaintiff begged him not to spray more bleach, Defendant said no.  *Id.*

Plaintiff states that on October 28, 2004, Defendant Alley taped a copy of the newspaper article on the window with Plaintiff's name highlighted in yellow.  Doc. 61-1, p. 16, 23.  Plaintiff reports that Defendant Alley was visibly angry at Plaintiff and had the newspaper article in his hand.  *Id.*, at 18.  After taping it on the window, he sent a trustee in to spray "pure bleach everywhere to hurt" the inmates.  *Id,* at 16.  Plaintiff states that each time inmates complained, they increased the amount of bleach to make it worse.  Doc. 61-1, p. 17.  Defendant Alley allegedly told Plaintiff "he was making it strong so it would kill the air borne germs."  *Id.*, at 16.

Plaintiff flatly denies that Defendant Alley ever told him it was diluted bleach and asserts the Defendant knew it was concentrated bleach.  Doc. 61-1, p. 21.  When Plaintiff tried to tell the Defendant about the dangers of using concentrated bleach in unventilated areas, Defendant Alley responded that he did not want to get staph infection, and he did care about what happened to the inmates.  *Id.*, at 22.  Plaintiff also contends that at each occasion when Defendant Alley had the pod cleaned, "the amount of bleach was increased, as the prisoners complaints became worse."  *Id.*, at 26.

Plaintiff submitted as additional evidence a copy of the transcript of the calendar call made on October 19, 2004 before the Honorable N. Sanders Sauls.  Plaintiff's Exhibit 8 (doc. 61-5).  Plaintiff's comments within that hearing indicate his awareness that the bleach was being used to clean and prevent a staph infection.  Doc. 61-5, p. 17.  Plaintiff also, within that hearing, expressed his desire "to get this information on the

outside" and was his "last effort to try to make this public so this – this would stop." *Id.*, at 18.

**Analysis**

As noted at the outset, Plaintiff's claims arising prior to October 28, 2004, are barred by the statute of limitations and must be dismissed. What remains to be decided is the cleaning on October 28, 2004, and two instances of cleaning in 2005.

**Two instances in 2005**

Plaintiff's allegation that Defendant Alley exposed him to bleach on two occasions, from May 12, 2005, through July 8, 2005, is unsupported. Plaintiff concentrated his evidence with respect to the October 28, 2004, incident, and the incidents which preceded that date. Defendants are entitled to summary judgment as to any claim arising in 2005 because the claims are not supported.[4]

**October 28, 2004**

The United States Constitution does not require "comfortable prisons" with all the amenities, but it requires that prisons not be "inhumane." Farrow v. West, 320 F.3d 1235, 1242 (11th Cir. 2003), *citing* Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). The conditions of prison life and the treatment of prisoners is governed by the Eighth Amendment, which prohibits cruel and unusual punishment. Farrow, 320 F.3d at 1242-43, *citing* Helling v. McKinney, 509 U.S. 25, 31, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993). In general, "prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and

---

[4] It is also doubtful that Plaintiff exhausted his administrative remedies as to claims arising months later.

unnecessary infliction of pain' " <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004), *quoting* <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

Plaintiff was at the time of these events a pre-trial detainee. "The Eleventh Circuit Court of Appeals has held that 'in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the Eighth Amendment to convicted persons.' " <u>Daniels v. City of Hartford</u>, 645 F.Supp.2d 1036, 1056 (M.D. Ala., 2009), *quoting* <u>Belcher v. City of Foley</u>, 30 F.3d 1390, 1396 (11th Cir. 1994) (quoting <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1574 (11th Cir. 1985)). Therefore, Plaintiff's Due Process claims are still properly evaluated under the standard for Eighth Amendment claims in the prison context.

A two-part analysis governs Eighth Amendment challenges to conditions of confinement. <u>Chandler</u>, 379 F.3d at 1289. "First, under the 'objective component,' a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment." <u>Hudson v. McMillian</u>, 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992), *cited in* <u>Chandler</u>, 379 F.3d at 1289.

> The challenged condition must be "extreme." *Id.,* at 9, 112 S.Ct. at 1000. While an inmate "need not await a tragic event" before seeking relief, *Helling v. McKinney*, 509 U.S. 25, 33, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.,* at 35, 113 S.Ct. at 2481. Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement]. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates

> contemporary standards of decency to expose anyone unwillingly to such
> a risk. In other words, the prisoner must show that the risk of which he
> complains is not one that today's society chooses to tolerate. *Id.,* at 36,
> 113 S.Ct. at 2482.

Chandler, 379 F.3d at 1289. The second part of the analysis requires prisoners to show

that prison officials "acted with a sufficiently culpable state of mind" regarding the

condition at issue. Hudson, 503 U.S. at 8, 112 S.Ct. at 999 (marks and citation

omitted); 379 F.3d at 1289. "The proper standard is that of deliberate indifference."

Chandler, 379 F.3d at 1289, *citing* Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321,

2327, 115 L.Ed.2d 271 (1991).

Here, the evidence reveals that cleaning of the jail was done to prevent the

spread of staph infections, a very legitimate concern. Defendants presented evidence

that the cleaning was done with a diluted bleach mixture consisting of one part bleach to

ten parts water. Testimony from Defendant Alley's affidavit shows that he personally

supervised the jail trustees who were cleaning the jail. Doc. 48-1. His affidavit provides

personal knowledge and direct evidence that the cells "were never sprayed with a

concentrated form of bleach;" rather, the cleaning solution was "one part bleach diluted

by ten parts water."

Plaintiff, on the other hand, has presented evidence that the cleaning was done

with "concentrated bleach" and not with a diluted cleaning solution of one part bleach to

ten parts water. Doc. 61-1, p. 13. Plaintiff attests in his affidavit that he knows how

concentrated bleach feels in your hand and that he tested it.[5] *Id.* Plaintiff also testified

---

[5] It is not clear from Plaintiff's evidence *how* he would have been able to put the
bleach in his hand as the bleach was sprayed from a garden type sprayer as opposed
to the cleaning product being in a mop bucket. Nevertheless, it is accepted for present
purposes that Plaintiff was able to do so and is competent to so testify.

that when he asked Defendant Alley to dilute the bleach, the Defendant answered no, and just smiled.  That is sufficient evidence to raise a genuine dispute as to the strength of the cleaning product.

As additional support for this argument, Plaintiff challenges the fact that Defendant Hodges "was never present during the spraying of the bleach and has not testified that she supervised the measuring of the bleach before it was sprayed."  Doc. 61, p. 46.  Thus, Plaintiff argues that the Defendant "has no personal knowledge concerning the concentration of the bleach."  *Id.*  However, that argument equally applies to Plaintiff.  Plaintiff provides no evidence attesting to his personal observation and presence at the time the bleach was either diluted or not, and put into the sprayer. Thus, I have considered this evidence but find it is not persuasive for either party.

Plaintiff attests that Defendants increased the amount of bleach used in each cleaning.  It is not clear how the amount of bleach could be increased if straight, concentrated bleach was used on each occasion, as Plaintiff alleges.  It is likely that a diluted bleach mixture was used and the amount of bleach in the mixture was increased for Plaintiff to maintain that the amount of bleach was increased to punish the prisoners because of their complaints.  This issue, however, only adds support to the conclusion that Plaintiff has created a genuine dispute of fact over whether the bleach used to clean the jail was diluted or pure, concentrated bleach.  Thus, it is accepted that Plaintiff has raised a genuine issue over whether the bleach used was diluted.

It is also undisputed that when the trustees were cleaning the jail with bleach on October 28, 2004, the officers left the pod, and the prisoners were allowed to go outside to the recreation yard for at least an hour.  Plaintiff testified that "[t]he hallway door to

the recreation yard was left open to let the toxic fumes clear from the hallways." Liquid bleach in any form evaporates rapidly. After an hour, the bleach that was sprayed would have dried and noxious fumes in the facility would have been significantly dissipated. While there could have still been a strong smell of bleach after an hour, Plaintiff has not come forward with evidence that the level of the fumes after an hour was dangerous to his health. Plaintiff has presented no evidence of lung damage or any other significant adverse health consequence arising from the cleaning on October 28, 2004.

Cleaning of a jail, with precautions taken to remove officers and prisoners from the bleach fumes when the fumes are strongest, does not pose an "unreasonable risk of serious damage." *See* Chandler, 379 F.3d at 1289-90. While the fumes may have been unpleasant for a time, Plaintiff has come forward with no evidence of anything other than a temporary discomfort. This does not violate "contemporary standards of decency," or constitute the denial of "the minimal civilized measure of life's necessities." Chandler, 379 F.3d at 1289-90; Farrow, 320 F.3d at 1243; Rhodes, 452 U.S. at 347, 101 S.Ct. at 2399. Defendants are entitled to summary judgment on this claim.

Plaintiff's retaliation claim also fails. The basis of this claim is that bleach was used to retaliate against Plaintiff for filing complaints and grievances concerning the cleaning. The claim must fail because a cleaning practice that was already being done prior to October 28, 2011, (and Plaintiff testified such cleaning had been done approximately 15 times previously), could not constitute retaliation on October 28, 2004. If the cleaning was not retaliation on day one, it does not become retaliation on day fifteen simply because Plaintiff complained about it.

Additionally, the heart of a retaliation claim is that an inmate is punished for exercising a constitutionally protected right.  *See* Adams v. James, 784 F.2d 1077, 1082 (11th Cir. 1986), *citing* Bridges v. Russell, 757 F.2d 1155 (11th Cir. 1985).  A court must balance and accommodate the prison's legitimate needs and goals with the prisoner's constitutional rights.  *See* Adams v. Wainwright, 875 F.2d 1536 (11th Cir. 1989) (finding Adams' evidence refuted his allegations of retaliation); Bell v. Wolfish, 441 U.S. 520, 546, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).  Therefore, the court must determine whether the action by jail authorities is reasonably related to a legitimate penological interest.  *See* Rhodes v. Chapman, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981).  There is a legitimate penological interest in cleaning a prison or jail to prevent the spread of a serious, and easily transmitted, infection.  There is no evidence to dispute the fact that the cleaning was undertaken to prevent the spread of staph infection.  Plaintiff's retaliation claim must fail and Defendants are entitled to summary judgment in their favor.

Plaintiff's third claim for the denial of medical care also fails.  Deliberate indifference to the serious medical needs of sentenced prisoners violates the Eighth Amendment's prohibition of cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  A "'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Hill v. Dekalb Regional Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666

(2002), *quoting* Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D. N.H. 1977).

Alternatively, "a serious medical need is determined by whether a delay in treating the

need worsens the condition" or "if left unattended, poses a substantial risk of serious

harm." Mann v. Taser Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009), *citing* Hill, 40

F.3d at 1188-89, and Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

There is no evidence that Plaintiff had a serious medical need.  Plaintiff

experienced short-term irritation to the fumes from cleaning on October 28, 2004, but

there is no evidence of *any* need for treatment.  Plaintiff indicates no treatment has

been provided, and there is little that could have been done for Plaintiff on the day of the

event other than to go outside, and breathe fresh air.  There is no evidence that any

medical treatment was needed or required.  Moreover, as Plaintiff has shown that there

were many instances of cleaning with bleach prior to October 28, 2004, it is obvious that

if Plaintiff were particularly susceptible to irritation from bleach, he would have filed

requests for treatment prior to October 28, 2004.  There is evidence that Plaintiff

submitted only one grievance concerning the cleaning (doc. 48-2, p. 5), dated October

18, 2004.  Plaintiff complained that jail staff had been using "pure bleach" to clean and

he said it was dangerous, and he complained of lung problems, blurred vision and

swollen eyes.  Notably, Plaintiff never requested any medical care for any such health

problems on October 28, 2004, or at any time prior to that date.  If Plaintiff were having

serious health problems from many instances of cleaning with bleach, he would have

sought medical care.  He did not do so.  There is no evidence that Plaintiff suffered from

a serious medical need and no evidence that Plaintiff ever requested or sought medical

care and was denied. Summary judgment should be granted in favor of Defendant Hodges on this claim as well.

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's amended complaint, doc. 18, be **DISMISSED** as to Defendant Langston pursuant to Plaintiff's notice of dismissing him from this case, doc. 61, and that Defendants Hodges and Alley's motion for summary judgment, doc. 48, be **GRANTED** on all claims and the Clerk of Court be **DIRECTED** to enter judgment in their favor, and that costs be assessed against Plaintiff.

**IN CHAMBERS** at Tallahassee, Florida, on February 2, 2011.


 S/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**